Good morning. May it please the court. Trenton Packer from the Law Offices of Timothy Scott for Mr. Sandoval. In this case, Mr. Sandoval testified at his co-defendant's trial under an immunity grant, during which, during the immunity grant, the district court promised him that it would not use any testimony against him at his sentencing hearing. The government didn't object to that district court's broad grant, and then the court reneged on its promise, sentencing Mr. Sandoval to 97 months because it believed that his based entirely on his testimony at his co-defendant's trial. What do you do with this case of United States v. Martinez-Navarro, which appears to have great similarities to this case? It does have some similarities, Your Honor, but the main difference, the critical distinction, is that in that case, the district court judge, Judge Enright, made no such promise to the defendants. Here, Judge Burns told Mr. Sandoval, after Mr. Sandoval's counsel expressly raised a concern, Mr. Sandoval's counsel said, I don't know that this would be binding on the court to not consider anything he says during his testimony at the time of his sentence. The court responded, no, it would be binding on me, that's how I read it. It was based on the district court's expressed promise that it would not, would not, could not use any testimony that Mr. Sandoval offered at his co-defendant's trial at sentencing, that Mr. Sandoval made the very difficult decision to testify. In that case, isn't it true that defendants gave sworn, executed statements confessing, and then later offered contradictory testimony? Here, we have only the testimony of the DEA agent that he confessed. We have no sworn testimony. Is that correct? That's absolutely right, Your Honor. And, in fact, the DEA agent's testimony was contested by Mr. Sandoval. He maintained his innocence through almost every phase of these proceedings. At initial interviews with the DEA, he said, I had no idea that there were drugs in that truck. I had no involvement. At the interview that the DEA eventually used, the government eventually used against Mr. Sandoval at his trial, he initially said, I didn't know about those drugs. The government approached Mr. Sandoval on numerous occasions before trial, offering him a signature bond, offering him an alternative disposition, and Mr. Sandoval's a lawful permanent resident, so an alternative disposition could very well have helped him keep his papers. They offered him all of these inducements to get him to testify, and he continually said, no, I'm innocent. I didn't know about those drugs. So the court hits on a very critical distinction, a factual distinction. There's no written, no sworn statement from Mr. Sandoval. What does that go to, that the district court might have been wrong in determining that there was perjury? Is that the distinction? No, Your Honor. What is the import of that? The import of that is, first of all, it is, as Judge Nelson noted, a distinction between the cases. But the more important reason why the court ought to consider that is it tells us why it was that Mr. Sandoval was willing to testify only after the court said, I promise I won't use that testimony against you at sentencing. Did he say sentencing? The quote I had in my notes was that no use will be made of his testimony. But can you just refer me? Your Honor, I'm looking at the excerpts of record, page 285. And again, the court's response immediately after Mr. Sandoval's counsel says, I don't know that this would be binding on the court to not consider anything he says during his testimony at the time of sentence. The immediate response is no. And Mr. Sandoval was present during that hearing. This happened immediately after the guilty verdict was read in his case. The question I have is whether that language by the district court gives anything in addition to the language of 6002, which we said in that Martinez-Navarro that the not testifying truthfully, in other words, the content or the information couldn't be used, but the act of not truthfully testifying was something that a sentencing judge could consider. Do you think this language gives something beyond 6002? Yes, Your Honor. I think the court made an explicit promise to Mr. Sandoval to induce his testimony. And he testified based in large part on that promise. And so the judge, as this court has recently held in the cases of Straub and Wilkes, there are immunity grants that the district court has the right to give that may go beyond the statutory immunity grant. And that's what the court did here. It expanded the immunity grant beyond what 6002 may have contemplated. The government didn't object. The government didn't seek to clarify that that wasn't the scope of the anticipated immunity. And so Mr. Sandoval made a decision based on the district court's promise. And then the district court reneged on that promise. So in Martinez-Navarro, the court points out, we point out that the immunity grant of 6002 is coextensive with the privilege against self-incrimination and therefore does not extend to perjury. And so that's, I guess I come back to that, whether an expectation would be reasonable that such a commitment by the district court would extend to perjury, which is what the district court found rightly or wrongly. Well, two responses, Your Honor. First of all, it's important that the Martinez-Navarro court did not engage any of the statutory arguments that Mr. Sandoval advances. There's no discussion of the plain meaning argument. There's no discussion of the espresso unius argument, the lenity arguments that Mr. Sandoval sets forth. And so I think this court is still free to engage those arguments because they were not considered by the panel, the three-judge panel in Martinez-Navarro. And under this court's precedent where the issue was not squarely decided or even addressed, the court is free to consider it here. Although, you know, the court decided the ultimate issue about the impact of 6002, and then there were new arguments that weren't considered. And I know there's sometimes a debate about, well, if somebody raises a new argument, can you then not be bound by prior decisions on the ultimate issue? Do you have a case that would say we're free to do that? Well, Your Honor, I'm looking at Judge Kaczynski's concurring opinion, admittedly, in Johnson. But more significantly, his discussion of then-Chief Judge Schroeder's opinion in Weems, noting in a slightly different context, the context of collateral estoppel, that the word necessarily means only that the court undeniably decided the issue, not that it was unavoidable for it to do so. So it does invite the conflict in some circuit precedent between whether if something was absolutely necessary to the disposition of the case, but the ultimate issue came out the other way, whether the court still is free to reconsider it. It's our contention that because the court in Martinez-Navarro did not engage those statutory arguments at all, this court is free to engage them now. And we think, frankly, that the Martinez-Navarro court got it wrong because the plain meaning of Section 6002 is that the immunity grant is plenary, essentially, at any stage of a criminal proceeding, point to the Fourth Circuit case of Lee, which held that a sentencing hearing constitutes a criminal case. And note that unless the government wanted to charge Mr. Sandoval with perjury or with making a false statement and prove all of the elements of those offenses beyond a reasonable doubt, that neither the government nor the court can use Mr. Sandoval's compelled testimony against him at the time of sentencing. And, Your Honors, I had intended to reserve two minutes for rebuttal. Unless the court has any further questions right now, I'd like to do so. Well, I do have one question for you. They can't use it against him. So your idea is that he would have to be resentenced by the judge, but without reference to what he said when he testified, the judge thought falsely. Couldn't the judge still give the same sentence? He could, Your Honor, but he would have to justify it using different means. He, in the record, the court said, and I'm looking at the excerpts of record at page 18, quote, he doesn't get to roll the dice, take the stand, and lie, and there's no consequence. We just whistle past the graveyard. He doesn't get to do that. He expressly considered the testimony given under the compelled immunity grant. And so, yes, Your Honor, the remedy we seek is remand to the district court for resentencing, at which point the district court not only can't expressly acknowledge that he's considering it, but cannot consider the testimony at all. Thank you. Thank you. Good morning. May it please the Court. Tim Perry for the United States. The most important thing in this case is that Section 6002 does not independently create any privilege that does not already exist within the Constitution's Fifth Amendment. As Your Honor has noted, the immunity grant scope of Section 6002 is coextensive with the Fifth Amendment. Now, in the 6002 counsel, specifically, do the words, a prosecution for modifies otherwise failing to comply with the order in 6002? Yes, Your Honor. That's correct. The statutory construction of Section 6002 should start first with a recognition of what Section 6002 applies to and what it does not apply to. We know from the Supreme Court that the Fifth Amendment does not protect lying. There is no Fifth Amendment privilege to lie. Because lying falls outside the scope of the Fifth Amendment, it also falls outside the scope of the immunity grant of Section 6002. And for that reason, 6002, by its terms, just does not apply to lying in any case, not in any situation. And what's important about that is that's an anterior question in statutory construction. That's a question the Court asks itself first before going on to the specific wording of that particular prepositional phrase that Your Honor mentioned. If the Court answers the question, yes, lying falls outside the scope of the Fifth Amendment, that ends the inquiry. That means that it's not a privilege to lie. I think it's important to note that if the Court were to remand, that may very well happen in the normal course, because it is important that Mr. Sandoval be held to account for lying. But not in this case. It was appropriately dealt with in this case at sentencing because he was not – he did not sustain an additional conviction. The stakes were not that high. He simply was sentenced to the high end of a generously calculated guideline range. That's all that happened to him. Because the stakes were relatively low as opposed to an actual new charge and new conviction, preponderance of the evidence was all the district court needed to find that he had lied. And the district court had plenty of support for that conclusion because Mr. Sandoval had already been convicted by a jury of his peers, 12 people unanimously finding that this story that he told about not really being involved with smuggling this commercial amount of narcotics in San Diego and Imperial counties was absolutely false. They rejected that story. So the jury had already rejected it, and the judge, hearing everything, a neutral judge who was there, who heard all the facts, also concluded that by a preponderance of the evidence he had lied and therefore he could take it into account at sentencing. Counsel, Jeff Gould, could I ask you a question, please? Yes, Your Honor. Let's assume that I accept your argument on the scope of 6002, but still how do you deal with the representation the judge made in the court? If the judge said, I'm not going to use any of that against you, then don't we have or should we have a concern to enforce what a judge says in the courtroom? It's important to note when he said that. He said that before Mr. Sandoval had testified about anything in Mr. Prado-Segura's case at the point that the judge is ordering a witness to testify. And by the way, he did not testify voluntarily. He wasn't induced to testify. He was ordered to testify. Before he testified, we did not know that he was going to lie. When a judge orders a witness to testify, it is assumed that the judge is ordering him to testify truthfully. No one at that point was thinking that he would actually, if everything went well, testify falsely. In addition, what the judge did was he just gave a summary explanation of section 6002. He did not read all of the case law surrounding section 6002. He did not articulate all the possible scenarios in which there might be an exception to section 6002. And that's only fair that he gave that summary explanation. Mr. Sandoval's attorney was there. And it's important to note that Mr. Sandoval's attorney did not object at sentencing, which is the point where the rubber met the road on that issue. He did not object in the sentencing papers. He did not object when the judge, as Mr. Packer pointed out, very clearly articulated that he was going to sentence him in part on the basis of his false statements in Mr. Prado-Segura's trial. I think perhaps one other important point on that issue is that this argument really should not be taken seriously. It amounts to Mr. Sandoval saying the judge didn't tell me specifically that I wasn't allowed to lie. Therefore, I felt free to lie, and so I lied. That kind of, you know, assertion that if I just cross my fingers behind my back and the judge doesn't tell me that the cross my fingers rule doesn't apply, I can lie, it's not to be taken seriously. When people testify, they must testify truthfully. But did Mr. Sandoval say that, although he was convicted, didn't he maintain all along that he was not involved? Not all along. He confessed to DEA agents that testified. The DEA agent testified that he confessed. There was no sworn statement as there was in the recent case that we asked you to talk about. So all along, he was consistent, was he not? He was consistent at his trial. He was not consistent beforehand. Beforehand, he did confess. Assuming that he did confess, which he said he did not. That's right. Why shouldn't he have to be charged with perjury, and why shouldn't there be a jury trial or a trial of some sort? Because it's perfectly appropriate for the judge to take into account things that fell outside the scope of the immunity, and lying falls outside the scope of immunity. Assuming he was lying. The judge found that he was lying, and the jury did as well. All right. What's important also on that point, there are a couple of auxiliary points. The first is that this Court's Thomas case, which is one of the so-called steroid cases from San Francisco, this Court found ruled squarely that testimony is not compelled if it's a lie. Obviously, the judge is not ordering Mr. Sandoval to testify falsely. He's ordering him to testify truthfully. Because he didn't testify truthfully, that testimony was not compelled, and because it's not compelled, it does not fit within the statutory terms of Section 6002. It's important to note that Mr. Sandoval did not merely make false statements. I think it's important to characterize the district court's findings in sentencing this way. He did not simply say something that was false on the stand. What he did was he lied with the purpose of falsely exonerating a co-conspirator. That's what the judge found. Is that correct? Let me just understand a little bit better the sentencing judge's authority. I guess that's what Martinez-Navarro was actually looking at. So in sentencing, I think we have cases saying that a judge can consider conduct that was not convicted or that the defendant wasn't, even if he was acquitted, that the judge has to find by preponderance. Here, I guess the judge did make a finding, and so what would he be bound to? Is this a factual finding, or how would you characterize it? I would characterize it as a factual finding. Credibility is particularly within the scope of a district judge's prerogative. It's a factual finding to which this Court must defer. Judge Burns was there. He knew exactly what was going on. Since your time is almost up, I suppose, without deciding, we conclude the district court did err in considering Mr. Sandoval's testimony. Do we apply harmless error analysis? Do you have any cases dealing with this kind of thing? I think, frankly, that it's fair when Mr. Packer says that the court certainly did consider his lies at sentencing. I think that it might not change the judge's evaluation of his culpability, but then again, it might. So I think that in the end, I don't believe that it is harmless if it's an error. Plain error review does apply here. That's the court's option. There was no objection at sentencing. The court should not opt to review this under a plain error standard, simply because it's not plain error to take into account a witness's lies at his sentencing. That is certainly not plain. And it doesn't offend the reputation of the district court. To the contrary, for a district court to take into account someone's obstructive conduct, that's what we're talking about here, someone's false statements and obstructive conduct to falsely exonerate a co-conspirator, that's something that underscores the district court's pursuit of justice. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honor. Judge Nassif, I think you hit on a very important point here, and that is that when the district court promised Mr. Sandoval it would not use his testimony against him at sentencing, it was that promise that made what was a Hobson choice to that point easier for Mr. Sandoval. If he hadn't testified, I guess what opposing counsel says is that he was compelled by the order, I guess he would be found in contempt, right? That's correct. Based on the record, as Judge Nelson pointed out, he had always maintained his innocence. And so the notion that either the court or the government was not put on notice, that he may do that again while testifying at his co-defendant's trial, I think is not borne out by the record. He had all along said, I didn't know about those drugs, I'm innocent. And so when the judge made the promise that I will not use this against you for any reason, including at sentencing, it made the decision between accepting a contempt order, which is a decision he can make, and testifying easier for him. And that's why he testified. And that's why the district court fulfilled its promise. Counsel, how do you address the plain error argument? That is, assuming it's an error, if there had been objection, how does it go to the fairness or integrity or reputation of the court for the court to sentence him at the top of the guidelines range, taking into account that the court makes a finding he's given false testimony? Your Honor, first of all, we believe that the issue was preserved, first when Mr. Sandoval's trial counsel raised the issue with the court at the time that the testimony was compelled, and again when he objected to an obstruction of justice enhancement. Now, concededly, on the record at the time of the sentencing hearing, trial counsel did not object to the court using that information, but we think the record was sufficiently preserved. But even if plain error applies, Your Honor, we think that it does for a district court to make a promise, grant blanket immunity as the government characterized it in its brief, and then renege on that promise. It does offend our notions of justice, and it ought to be something that this court should consider on plain error review and remand with an instruction to the district court that it cannot consider the immunized testimony. Thank you, Your Honor. Thank you. Okay, the case of United States v. Sandoval is submitted, and we'll next hear the case of United States v. Acosta Sierra.
judges: Nelson, Gould, Ikuta